## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **151 FIRST SIDE ASSOCIATES, L.P.,**<br>and **ZAMBRANO CORPORATION**, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>**PEERLESS INSURANCE COMPANY**, )<br>a corporation, )<br><br>Defendant. ) | 2:08cv79<br>**Electronic Filing** |

### MEMORANDUM OPINION

March 11, 2010

I.      **INTRODUCTION**

Plaintiff, 151 First Side Associates, L.P. ("First Side") filed a filed a complaint against

Defendant, Peerless Insurance Company ("Peerless"), alleging claims of: (1) breach of contract;

and, (2) bad faith on the part of an insurer pursuant to 42 PA. CONS. STAT. ANN. § 8371. Plaintiff,

Zambrano Corporation ("Zambrano"), was permitted to intervene as plaintiff and filed a

complaint against Peerless, also alleging breach of contract and bad faith. Peerless filed a motion

for summary judgment, First Side and Zambrano (collectively "Plaintiffs") have filed a joint

response and the motion is now before the Court.

Peerless filed a Concise Statement of Material Facts ("Peerless CSMF") in support of its

motion for summary judgment. The Local Rules of the United States District Court for the

Western District of Pennsylvania require that Plaintiffs file a responsive "concise statement

which responds to each numbered paragraph in the moving party's Concise Statement of

Material Facts by . . . admitting or denying whether each fact contained [therein] . . . is

undisputed and/or material . . . setting forth the basis for the denial if any fact . . . is not admitted

in its entirety (as to whether it is undisputed or material), with appropriate reference to the record

. . ." *See* LR 56.1(C)(1)(a) & (b).  Contrary to Rule 56.1, Plaintiffs instead filed a "Joint Concise

Counter-Statement of Facts"("Pl. JCSF") which neither admits nor denies facts set forth in

Peerless factual statement.  Material facts set forth in a moving party's concise statement of material facts will be deemed admitted for the purpose of deciding the motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *See* LR 56.1(E).  Though  it is not for the Court to sort through the entire record to determine whether stated facts are disputed, the Court will use its best efforts to reconcile the statements filed by the parties.

II.    **STATEMENT OF THE CASE**

Peerless issued a Builder's Risk Insurance Policy to First Side for the construction residential condominiums in Pittsburgh, Pennsylvania (the "Project"). Peerless CSMF ¶ 1; Pl. JCSF ¶ 10.   The policy was written to cover the specific construction project located at 151 Fort Pitt Boulevard in Pittsburgh.  Peerless' CSMF ¶ 2.  Zambrano, the general contractor on the Project and a partner in First Side, was included as an additional insured on the policy.  Peerless' CSMF ¶ 3; Pl. JCSF ¶ 6.

On or about May 5, 2006, Zambrano entered into a subcontract with High Concrete Innovations ("High Concrete") to fabricate and erect precast concrete panels and balcony slabs for the project.  Peerless' CSMF ¶ 4; Pl. JCSF ¶  4.  On or about October 25, 2006, a fire destroyed High Concrete's manufacturing facility in Lebanon, Pennsylvania.  Peerless' CSMF ¶ 5; Pl. JCSF ¶ 13.  The precast concrete panels awaiting delivery on the subcontract were destroyed, and High Concrete's manufacturing facility in Lebanon was unable to manufacture any more product for the project[1].  Peerless' CSMF ¶ 6; Pl. JCSF ¶ 15.  High Concrete was not a named insured under the Builder's Risk policy.  Peerless' CSMF ¶ 7.

---

[1]    At the time of the fire, approximately fifty-five (55) of the more than six hundred panels needed for the project had been produced by High Concrete, and no payment had been made by Zambrano on the subcontract. Peerless' CSMF ¶¶ 5, 6 & 8.

First Side submitted a soft cost[2] claim under the policy in the amount of $10,593,093. Peerless' CSMF ¶ 11.  Zambrano also submitted a claim to Peerless under the policy in the amount of $869,844.00 for extra expenses and overtime attributed to the loss of the fifty-five (55) concrete panels destroyed in the High Concrete fire. Peerless' CSMF ¶ 13.  No claim was submitted to Peerless for the actual loss of the panels. Peerless' CSMF ¶ 12.  Peerless denied the claims of both First Side and Zambrano. Peerless' CSMF ¶ 14..

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law.  To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id.*  The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well.  *Whiteland Woods, L.P. v.  Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a

---

[2]    The "soft cost" coverage purchased by First Side included items such as additional insurance premiums, extra expenses and additional loan interest an insured may have to pay in the event of a covered loss. Peerless' CSMF ¶ 2.

genuine issue for trial." FED. R. CIV. P 56(e).  Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).  Moreover, the non-moving party cannot defeat a well supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## IV.   DISCUSSION

First Side and Zambrano contend that coverage exists under the policy for the losses claimed, Peerless breached of the contract for insurance, and acted in bad faith.  Plaintiffs allege that the loss of the concrete panels at the High Concrete facility caused soft cost and extra expenses covered under the Soft Cost, Extra Expense and Rental Income Endorsement of the policy.  Federal courts sitting in diversity must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In this instance, There is no dispute that Pennsylvania law applies to the issues before the Court.

The interpretation of an insurance contract is a matter of law and is generally performed by a court. *401 Fourth Street, Inc. v. Investors Insurance Group*, 879 A.2d 166, 171 (Pa. 2005); *Madison Construction Co. v. Harleysville Mutual Insurance Co.*, 735 A.2d 100, 106 (Pa. 1999). The goal of insurance contract interpretation is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Gene & Harvey Builders, Inc. v. Pennsylvania Manufacturers' Association Ins. Co.*, 517 A.2d 910, 913 (Pa. 1986).  In its

analysis, a court must construe words of common usage in their "natural, plain, and ordinary sense." *Madison Construction Co. v. Harleysville Mutual Insurance Co.*, 735 A.2d at 108. If the language of the policy is clear and unambiguous, a court is required to give effect to that language. *Id.* at 106; *Dominick v. Statesman Ins. Co.*, 692 A.2d 188, 190 (Pa. Super. 1997).

When a provision in a policy is ambiguous, however, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage. *401 Fourth St., Inc. v. Investors Ins. Group*, 879 A.2d at 171. Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Co.*, 519 A.2d 385, 390 (1986). This question cannot to be resolved in a vacuum; contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. *Madison Construction Co. v. Harleysville Mutual Insurance Co.*, 735 A.2d at 106. A court must not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity. *Steuart v. McChesney*, 444 A.2d 659, 663 (Pa. 1982).

First Side and Zambrano argue that the damage to the concrete panels located at the High Concrete facility during production, caused soft cost and extra expenses covered under the Soft Cost, Extra Expense, and Rental Income Endorsement to the Builders' Risk Insurance Policy issued by Peerless. The Soft Cost, Extra Expense, and Rental Income Endorsement, which specifically changes the Builders' Risk coverage, in relevant part states:

> Soft Costs -"We" pay for soft cost expenses that arise out of a "delay" resulting from **direct physical loss or damage to a building or structure described on the Soft Cost Schedule** that is caused by a covered peril. . . .

> Extra Expense - "We" cover only the extra expenses that arise out of the "delay" resulting from **direct physical loss or damage to a building or structure described on the Soft Cost Schedule** that is caused by a covered peril.

*See* Plaintiffs' Exhibit D, pp. 47-48 [Bates Nos. ZC 3528-3529] (emphasis added). Perils covered under the policy include "risks of direct physical loss unless the limited loss or caused by

a peril that is excluded." Plaintiffs' Exhibit D, p. 39 [Bates No. ZC 3520]. There is no dispute that direct physical loss or damage caused by fire is a covered peril under the policy. Further, the Soft Cost Schedule clearly indicates coverage for the building or structure located at Jobsite No. 001-151 Fort Pitt Blvd. Pittsburgh, PA 15222. Plaintiffs' Exhibit D, p. 12 [Bates No. ZC 3472].

Finally, under the "Property Covered" provision of the policy, it states:

"We" cover the following property unless the property is otherwise covered, excluded or subject to limitations.

"We" cover direct physical loss caused by a covered peril to buildings and structures at the "jobsite" described on the "schedule of coverages" while in the course of construction, erection or fabrication. This includes:

1.	materials and supplies that will become a permanent part of the buildings or structure;

2.	foundations, excavations, grading, filling, attachments, permanent fencing, and other permanent fixtures;

3.	scaffolding, construction forms or temporary fencing at the described "jobsite"; and

4.	temporary structures at the described 'jobsite'."

*See* Plaintiffs' Exhibit D, p. 34 [Bates No. ZC 3515]. There is no dispute that the concrete panels damaged at the High Concrete facility were materials that were to "become a permanent part" of the Project. The panels, however, were not located at the "jobsite" as expressly and unambiguously set forth above.

Plaintiffs agree that the phrase "at the jobsite" in the above language means that the basic property coverage is limited to the building and structure, and component parts of such not yet installed or erected, but only if such property is located at 151 Fort Pitt Boulevard. Plaintiffs argue, however, that the supplemental coverage provision of the policy expands the coverage beyond the loss or damage that occurs "at the jobsite." Specifically, under the Supplemental Coverages, the policy provides coverage for certain property located at "storage locations." In relevant part, the policy states: "Storage Locations – 'We' cover direct physical loss caused by a covered peril to . . . materials and supplies that will become a permanent part of a covered

6

building or structure in the course of construction, erection or fabrication  . . .  while they are at a storage location. . .The most we pay for loss to property at a storage location in any one occurrence is $10,000.00." *See* Plaintiffs' Exhibit D, p. 38 [Bates No. ZC 3519] The term "storage locations" is not defined under the policy, and Plaintiffs argue that, absent a schedule or definition of the term, the High Concrete facility was a storage location under the policy.

Peerless argues that the "material and supplies" at issue in this instance were damaged while at the manufacturing facility which is not a location designated by the insureds with a specific purpose of storing material for the insureds under the policy.  Moreover, Zambrano was not obligated under its contract with High Concrete to pay for any materials that had not been delivered to the jobsite at 151 Fort Pitt Boulevard.  The panels damaged in the fire, therefore, were the property of High Concrete.  High Concrete maintained the risk of loss for the panels, and in fact, submitted a claim for such loss with its insurance company and was paid on the claim. Peerless further contends that Plaintiffs' characterization of the term "storage location" unreasonably expands the ordinary usage of the term, and can lead to an absurd result not contemplated under the policy.

The Court agrees that the supplemental coverage provision of the policy expands the coverage beyond the loss or damage that occurs "at the jobsite." The Court finds, however, that the language of the policy is not ambiguous and under the plain meaning of the language: (1) the High Concrete production facility located in Lebanon, Pennsylvania, is not a "storage location" under the policy; and notwithstanding such finding, (2) the Soft Cost, Extra Expense, and Rental Income Endorsement specifically changes the Builders' Risk policy by expanding coverage to soft cost and extra expenses resulting only from direct physical loss or damage to a building or structure, including materials  that will become a permanent part of the project, located at Jobsite No. 001-151 Fort Pitt Blvd. Pittsburgh, PA 15222.

Plaintiffs argue that the term "storage location" used in the Supplemental Coverages section of the policy does not mean a specific or particular storage location, nor does the location

need to be scheduled or specified under the policy.  The Court agrees that a "storage location" may be more than one location, and does not have to be scheduled under the policy.  However, the Court disagrees that the High Point facility is included within the plain meaning of the term "storage location."

Words of common usage in an  insurance policy are construed according to their natural, plain, and ordinary sense. *Kvaerner Metals Div. of Kvaerner United States, Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 897 (Pa. 2006); *Madison Construction Co. v. Harleysville Mutual Insurance Co.*, 735 A.2d at 108.. We may consult the dictionary definition of a word to determine its ordinary usage. *Id.*  The Merriam-Webster Online Dictionary defines "storage," a noun, as "a space or a place for storing . . .  the state of being stored; *especially*: the safekeeping of goods in a depository (as a warehouse)."  *See* Merriam-Webster Online Dictionary, www.merriam-webster.com.  The Cambridge Dictionary defines "storage" as "the putting and keeping of things in a special place for use in the future." *See* Cambridge Advanced Learner's Dictionary, dictionary.cambridge.org.

In the policy, "storage" is used as an adjective, describing the type of location at which Peerless will cover "a direct physical loss" to certain materials that "will become a permanent part" of the Project.  Therefore, for High Point's facility to fit within the plain meaning of "storage location" it must be a space or place used for putting or keeping things for future use *i.e.* depository,  warehouse or, under an urban construction scenario, an empty lot or yard.  The Lebanon, Pennsylvania facility was used by High Point to produce the precast concrete panels required under its subcontract with Zambrano.  It was a production facility, not a storage facility. Notwithstanding issues of payment, transfer of title and/or risk of loss under the Uniform Commercial Code, the mere fact that the precast concrete panels were damaged post-production but pre-delivery[3] does not transform a production or manufacturing facility into a "storage

---

[3]   Under the subcontract, the panels were to be erected as delivered because of the lack of "lay down" area at the jobsite. Plaintiffs' Exhibit C, p. 14.  High Point was not going to start erection on the project, however, until one-half of the total panels were produced and available for

location."

Moreover, such an expansion of the common usage of the term "storage location" unreasonably and profoundly expands the coverage contemplated under the policy. Under Plaintiffs' definition, Peerless' liability under the Supplemental Coverage section would include manufacturing or production facilities for all the material permanently incorporated into the Project including for example: the fabricated steel, electrical wiring, HVAC equipment, drywall, plumbing, lighting fixtures, carpeting, paint, etc.  Further, Peerless' liability for any loss at a storage location was limited under the policy to $10,000.00 for any one occurrence with a total coverage limit under the policy for losses at storage locations of $1,000,000.00. *See* Plaintiffs' Exhibit D, p. 38 [Bates No. ZC 3519]; & p. 9 [Bates No. ZC 3469].

Notwithstanding, the Court's finding that High Point was not a storage location as contemplated by the policy, the Court finds that the expansion of coverage under Soft Cost, Extra Expense, and Rental Income Endorsement to the Builders' Risk Insurance Policy does not cover expenses related to a loss at a storage location.  The endorsement is not a blanket expansion of the Builders' Risk coverage.  To the contrary, the endorsement is very specific. It covers soft cost or extra expenses that arise out of a "delay" resulting from direct physical loss or damage to a building or structure, including such materials permanently incorporated into the Project, located at Jobsite No. 001-151 Fort Pitt Blvd. Pittsburgh, PA 15222.   The coverage under the Soft Cost, Extra Expense, and Rental Income Endorsement clearly and unambiguously does not include soft cost and extra expenses relating to any losses related to material at storage locations or in transit.

Because the language chosen by Peerless in the Soft Cost, Extra Expense, and Rental Income Endorsement does not contemplate the broad expansion of coverage advocated by Plaintiffs, Peerless did not breach the contract of insurance when it denied the claims of First Side and Zambrano. Having found that Peerless is not in breach of the contract, Plaintiffs' bad faith claim also fails.

---

erection. Plaintiffs' Exhibit F, pp. 85-86.

9

**V.    CONCLUSION**

The Court finds that the language of the policy is not ambiguous. Under the plain

meaning of the language as used in the policy: (1) the High Concrete facility is not a "storage

location" under the policy; and, (2) the Soft Cost, Extra Expense, and Rental Income

Endorsement specifically changes the Builders' Risk policy by expanding coverage to soft cost

and extra expenses resulting only from direct physical loss or damage to a building or structure,

including materials that will become a permanent part of the Project, located at Jobsite No. 001-

151 Fort Pitt Blvd. Pittsburgh, PA 15222. Further, Peerless did not act in bad faith.  Accordingly,

Defendants' motion for summary judgment shall be granted.   An appropriate order will follow.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Ronald H. Heck, Esquire
       Law Offices of Ronald H. Heck
       100 Wood Street Building
       5th Floor
       Pittsburgh, PA 15222

       Paul K. Geer, Esquire
       DiBella, Geer, McAllister & Best
       312 Boulevard of the Allies
       3rd floor
       Pittsburgh, PA 15222

       Brian W. Ashbaugh, Esquire
       Damon R. Thomas, Esquire
       Bluming & Gusky, LLP
       1200 Koppers Building
       436 Seventh Avenue
       Pittsburgh, PA 15219

       Barbara A. Zemlock, Esquire
       Post & Schell PC
       17 North Second Street, 12th Floor
       Harrisburg, PA 17101